

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-27-2006

# Harding v. Careerbuilder LLC

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1934

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Harding v. Careerbuilder LLC" (2006). *2006 Decisions.* Paper 1542.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1542

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-1934
_____

RICHARD L. HARDING,

Appellant

v.

CAREERBUILDER, LLC
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-cv-00188)
District Judge:  Honorable William H. Yohn, Jr.
_____

Submitted Under Third Circuit LAR 34.1(a)
February 13, 2006

Before:  SCIRICA, *Chief Judge*, BARRY and FISHER, *Circuit Judges*.

(Filed: February 27, 2006)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

In this case we are asked to decide whether the District Court properly granted

summary judgment for the defendant corporation in an age discrimination suit.  We

conclude that summary judgment was warranted, and will affirm.

## I.

Because we write only for the parties, we will recite only those facts necessary to our analysis. Richard Harding was a vice-president at Headhunter, Inc., a corporate consulting company, when it was bought in May 2001 by Careerbuilder, LLC. Careerbuilder retained Harding after the acquisition, but in March 2002, Careerbuilder underwent a management shakeup, and Harding's new supervisor, Mary Delaney, fired all six of the managers at Harding's level. After discussion with Harding, Delaney agreed to reinstate him, but in September 2002, she expressed dissatisfaction with his performance, and in October 2002 she fired him. He was 45. His replacement, a Careerbuilder manager from another division, was 29.

Harding sued, alleging age discrimination under the Age Discrimination in Employment Act ("ADEA"). There is no dispute that Harding established a prima facie case of discrimination by showing that he was over forty, was qualified for his job, and was replaced with a significantly younger worker.

In rebuttal of Harding's prima facie case, Careerbuilder adduced a nondiscriminatory explanation for the firing: Harding's failure to meet performance targets for revenue and "headcount" (number of new hires).

Harding countered that Careerbuilder's explanation was pretextual. He alleged that the documents in evidence did not clearly set forth the alleged performance targets; that Careerbuilder's record-keeping was inadequate to substantiate its claims of performance shortfalls; that Delaney and other supervisors rejected several of his

2

proposed new hires; and that his replacement had a worse headcount record than did Harding. Harding did not introduce any direct evidence of discrimination.

Careerbuilder moved for summary judgment, arguing that, on the record, no rational trier of fact could find its explanation to be a pretext for age discrimination. The District Court granted the motion, and this appeal followed.

We have jurisdiction under 28 U.S.C. § 1291. Our review of an order granting summary judgment is plenary. *Bieregu v. Reno*, 59 F.3d 1445, 1449 (3d Cir. 1995).

## II.

The Age Discrimination in Employment Act provides in relevant part that "it shall be unlawful for an employer to . . . discharge any individual . . . because of such individual's age." 29 U.S.C. § 623. Age discrimination, like other forms of employment discrimination, may be established through circumstantial evidence. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The plaintiff must first make out a prima facie case by showing that he or she (1) was over forty, (2) was employed by the defendant, (3) was fired (or subjected to some other adverse employment action), and (4) was replaced with someone sufficiently younger to create an inference of age discrimination. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996).

When the plaintiff has made this showing, a presumption of discrimination arises, which the defendant can rebut by giving a nondiscriminatory reason for the firing. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). If the defendant does so, then the

3

plaintiff must put on evidence showing that the defendant's proffered reason is a pretext for discrimination, or that discrimination remained a motivating factor in the decision (in addition to any non-discriminatory reasons).  *Id.*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  We have explained the standard for summary judgment in such "pretext" cases as follows:

> [T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext). . . .  [T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence. . . .

*Fuentes v. Perskie*, 32 F.3d 759, 764-65 (3d Cir. 1994) (internal citation and quotation marks omitted).

Our task, then, is to determine whether Harding has met this standard – whether, in other words, he has sufficiently undermined the plausibility of Careerbuilder's explanation so as to create a genuine issue of fact as to whether that explanation is legitimate or pretextual.  We conclude that he has not met his burden.

## III.

4

Harding contends that the evidence is sufficient to allow a reasonable factfinder to find Careerbuilder's explanation unworthy of credence. We disagree. However described and however established, a successful pretext claim requires evidence that the employer actually based its decision on reasons other than those given. "[A] plaintiff may survive summary judgment . . . if the plaintiff produced sufficient evidence to raise a genuine issue of fact as to whether the employer's proffered reasons were not its true reasons for the challenged employment action." *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1067 (3d Cir. 1996) (en banc). There are three ways to make this showing: the plaintiff can put on evidence "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir. 1993).

In this case, Harding admitted in his deposition that Careerbuilder's proffered reasons did have a basis in fact. He put on no evidence that the proffered reasons did not actually motivate his discharge, and his evidence that the proffered reasons were insufficient to motivate his discharge was, as the District Court correctly determined, inadequate.

## 1.

First, and most importantly, as the District Court emphasized, Harding admitted in his deposition testimony that Careerbuilder had nondiscriminatory grounds for firing him. The fact that an employer had legitimate grounds for firing an employee does not, of

5

course, necessarily mean that the employer in fact relied on those grounds. If the employee can show evidence of a discriminatory or mixed motive, the factual validity of the nondiscriminatory explanation will not necessarily protect the employer from a finding of discrimination. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 252 (1989). But Harding has put on no such evidence. Therefore, as we will explain, his admission dooms his suit.

The District Court found that Harding had admitted that he had been given various performance goals, that he understood that he was required to meet those goals, and that he did not meet them. We agree that Harding's deposition testimony clearly establishes those admissions, as can be seen in the following two exchanges:

> Q: Did [Delaney] make it clear to you that you would be expected to perform and to meet objectives?
> A [Harding]: Absolutely.
> Q: And she was very firm about that?
> A: Absolutely.

(App. 92.)

> Q: You do admit, don't you, sir, that during the time that Mary [Delaney] was your supervisor at Careerbuilder you did not meet all of your management objectives?
> A: Correct.
> Q: Which ones do you agree that you did not meet? . . .
> A: There was a head count objective.
> Q: That you did not meet?
> A: Did not meet.
> Q: Okay, what else?
> A: There was a revenue objective.
> Q: That you did not meet?
> A: Did not meet.

6

(App. 115-16.)

Harding's testimony negates any dispute as to whether Careerbuilder had a legitimate, nondiscriminatory basis for firing him. Harding's contention that the documents in evidence do not clearly set forth his performance goals is unavailing, because his own testimony confirms Careerbuilder's claim that he understood them and failed to meet them. We sit in judgment only of Careerbuilder's alleged discrimination, not of its managerial competence or the clarity of its communications with its employees. It is irrelevant to our analysis whether Harding thought his performance targets related only to his bonus (*see* Appellant's Br. at 15), or whether Delaney or another supervisor rejected some of Harding's proposed new hires (*see* Appellant's Br. at 17). Neither fact, if true, has anything in itself to do with age discrimination. It is no violation of the ADEA to fire an employee for failing to meet performance targets, whether or not those targets were reasonably expected by the employee to be used only for the calculation of his bonus. Nor is it a violation of the ADEA to fire an employee for failing to meet headcount targets when his supervisors rejected some proposed hires.[1] As our cases have emphasized, in an at-will employment relationship, the "employer may have any reason

---

[1]We do not read *Kautz v. Met-Pro Corp.*, 412 F.3d 463 (3d Cir. 2005), as relevant to the headcount evaluation. It is true that Harding's proposed hires had to be approved by his supervisors, but this requirement does not mean that the number of hires "ha[d] nothing to do with [Harding's] individual performance." 412 F.3d at 470. We are, indeed, hard-pressed to imagine an employment relationship in which an employee would never be evaluated based on outcomes which required the cooperation or approval of others.

or no reason for discharging an employee so long as it is not a discriminatory reason."

*Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995).

**2.**

Second, Harding lays stress on the fact that Careerbuilder has apparently lost most of the relevant data and records that would document Harding's job performance.[2] Evidence of lapses in the employer's record-keeping cannot on its own establish a pretext claim. Poor documentation by the employer of the basis for its asserted reason will strengthen a plaintiff's case if the plaintiff has evidence of an alternative reason, evidence that the asserted reason had no basis in fact, or evidence that the employer intentionally destroyed or concealed the relevant documents. But if the plaintiff has no such evidence,

---

[2](*See* App. 267-69 (deposition of Mary Delaney) ("A: His goals are on the goal sheets. . . . He missed these goals. You're missing the top sheet, which summarizes his total offices. Q: Well, where is it? A: We don't have any of the finance stuff. We moved. It's -- we don't have it. . . . Q: And you're talking about the company doesn't have any of those figures on its own? A: No. . . . Q: So what you're telling me [is that] that top sheet and the summary doesn't exist and cannot be reconstructed; is that right? A: Correct. Q: Okay. Is that a computer glitch or is that the way it's planned to happen? A: No. It wasn't planned to happen."); App 275-76 ("Q: Okay. Are you aware of documents that show these same numbers for the period from May through September, 2002? A: I'm sure there are documents, yes. Q: All right. Have you seen any? A: I did then. I-- I-- . . . I don't know if we could reconstruct those, either, frankly. Q: Is that gone, too? A: We used to have our finance group in Reston, and it moved and we got totally new people, and it's been hard to recover 2002. Q: Did anybody lose their jobs because of that? A: They were all gone anyway.").)

We note that there is no suggestion in this testimony that the relevant documentation was never generated, or that its content was other than Careerbuilder asserts. The testimony indicates simply that the documents have been lost. Thus, it is not adverse to Careerbuilder in the absence of a dispute about the factual information contained in the documents, *viz.*, that Harding had failed to meet his performance goals.

the employer's lapses in record-keeping will not in themselves be a barrier to summary judgment. *See*, *e.g.*, *Brewer*, 72 F.3d at 334 ("No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for.").

No adverse inference can be drawn, therefore, from the mere fact of Careerbuilder's inability to produce the records, absent evidence that they were intentionally concealed or destroyed. Here Delaney testified that the records were accidentally lost during an office move. (App. 276.) Harding has presented no evidence that the records were intentionally destroyed. Harding has likewise presented no evidence challenging, in any relevant respect, Careerbuilder's account of the information the records would have memorialized. He has presented no evidence that he did not in fact fall short of his performance targets, or that Careerbuilder management did not in fact believe that his performance was inadequate. *Cf. Fasold v. Justice*, 409 F.3d 178, 186 (3d Cir. 2005) (reversing summary judgment on pretext claim where employee presented evidence that supervisor had declared himself "happy" with employee's performance); *Bray v. Marriott Hotels*, 110 F.3d 986, 992 (3d Cir. 1997) (holding that the issue for the factfinder is what the employer actually believed about the employee's performance or competence). In fact, he has admitted that Careerbuilder's claim, that he failed to meet his performance goals, is correct.

**3.**

9

Third, Harding's evidence that Careerbuilder's proffered reasons were insufficient to motivate his discharge does not suffice to permit a reasonable inference of pretext. Harding proffers an internal Careerbuilder email which appears to indicate that Harding's replacement, 29-year-old Brooks Hughes, had a worse headcount performance record than did Harding.[3] We construe, as we must, any ambiguities in this document in favor of Harding, and we agree with Harding that it should be read to demonstrate that Hughes' headcount deficit was worse that Harding's at the time Harding was fired and replaced by Hughes.[4] This determination does not end our pretext analysis, however, for two reasons.

First, the document says nothing about revenue performance, which is the other factor adduced by Careerbuilder. Second, the document does not indicate, nor does any other evidence in the record, whether Hughes' position as manager of RBU was comparable in relevant respects to Harding's position. Harding has not, therefore, raised

---

[3]Plaintiff's Exhibit G (*see* App. 377), is an email message listing the performance figures for various Careerbuilder units for 2002. It is dated September 24, 2002, and states, *inter alia*, that "Headcount is at least 33% under plan over the 4 month period, with RBU leading the pack at 48%." "RBU" refers to the Recruiter Business Unit, which was run by Brooks Hughes at the time (*see* App. 370).

The message was written in response to another message, included in the body of the reply, in which another Careerbuilder executive had asked, "Are you sure that RBU was 48% under planned Headcount? Can you double check this." In confirming the figure, the author of the email also listed all the documentary sources from which she had drawn her data.

[4]The email's probative value should not be discounted on the ground that it contradicts Harding's deposition testimony that he could not identify a similarly-situated younger worker who had been treated differently, because Careerbuilder had not yet disclosed the email at the time of Harding's deposition.

10

a genuine fact issue as to whether he and Hughes were similarly situated with respect to either headcount or revenue performance. Harding cannot rest on bare allegation, and this Court cannot assume comparability in the absence of record evidence.

**IV.**

Careerbuilder contends that it fired Harding because of his failure to meet certain performance goals. Harding admits that he did not meet those goals. Harding's deposition testimony thus establishes at a minimum that both parties to this litigation agree that Careerbuilder had grounds for firing Harding entirely independent of his age.

Harding's burden, therefore, was to present evidence sufficient to convince a reasonable factfinder that those grounds "did not actually motivate the employment action." *Fuentes*, 32 F.3d at 764. The record contains no evidence of any discriminatory motive. Therefore there is no genuine dispute on the dispositive legal issue, whether Careerbuilder in fact had a discriminatory motive. Accordingly, Careerbuilder is entitled to summary judgment, and we will affirm the order of the District Court.

11