# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

KHRISTINE M. FLORAY,  )
                      )
       Plaintiff,     )
                      )
   v.                 )    C.A. No. N14C-08-175 FWW
                      )
DARGAN EXTENSIONS, LLC,  )
d/b/a 1-2-3 CA$H,        )
a Delaware Limited Liability Company, )
                      )
       Defendant.     )

Submitted: May 11, 2016
Decided: August 19, 2016

Upon Defendant's Motion to Summary Judgment

**GRANTED.**

John M. LaRosa, Esquire, Law Office of John M. LaRosa, Two East 7th Street, Suite 302, Wilmington, Delaware, 19801, Attorney for Plaintiff Khristine M. Floray.

Timothy J. Wilson, Esquire, The Wilson Firm, LLC, 24 Deerborne Trail, Newark, Delaware 19702, Attorney for Defendant Dargan Extensions, LLC, d/b/a 1-2-3 CA$H, a Delaware Limited Liability Company.

**WHARTON, J.**

# ORDER

This 19th day of August, 2016, upon consideration of Defendant's Motion for Summary Judgment and Opening Brief in Support of Defendant's Motion for Summary Judgment, Plaintiff's Answering Brief in Opposition to Defendant's Motion for Summary Judgment, oral argument and the record in this case, it appears to the Court that:

1. Plaintiff Khristine M. Floray ("Floray") brought this employment discrimination action alleging that her employer Dargan Extensions ("Dargan") engaged in sex and disability discrimination and retaliation.[1] Floray brought both state and federal claims under the Delaware Discrimination in Employment Act, ("DDEA"), 19 *Del. C.* §§ 711(a)(1) and 711(f); the Delaware Handicapped Persons Employment Protections Act, ("DHPEPA"), 19 *Del. C.* § 724(a)(2); Title VII of the Civil Rights Act of 1964, as amended, (Title VII"), 42 U.S.C. § 2000 *et seq.*; and the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 12112 *et seq.*[2]

2. Dargan moves for summary judgment on all claims for multiple reasons.[3] Floray opposes the motion,[4] although buried in a footnote in her brief in opposition to the motion, she advises that she abandons her federal claims

---

[1] Compl. at ¶ 1.
[2] *Id.* at ¶ 2.
[3] *See,* Op. Br. in Supp. of Def.'s Mot. for Summ. J.
[4] *See,* Pl.'s Ans. Br. in Opp. To Def.'s Mot. for Summ. J.

under Title VII and the ADA.[5] Therefore, the Court deals only with Floray's claims under state law.

3.  Superior Court Civil Rule 56(c) provides that summary judgment is appropriate when "there is no genuine issue of material fact...and the moving party is entitled to judgment as a matter of law.[6] The moving party initially bears the burden of establishing both of these elements; if there is such a showing, the burden shifts to the non-moving party to show that there are material issues of fact for resolution by the ultimate fact-finder.[7] The Court considers the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in determining whether to grant summary judgment.[8] Summary judgment will only be appropriate when, upon viewing all of the evidence in the light most favorable to the non-moving party, the Court finds that there is no genuine issue of material fact.[9] When material facts are in dispute, or "it seems desirable to inquire more thoroughly into the facts, to clarify the application of the law to the circumstances," summary judgment will not be appropriate."[10] However, when the facts permit a reasonable person to draw

---

[5] *Id.* at 23 n.92.
[6] Del. Super. Ct. Civ. R. 56(c).
[7] *See, Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979) (citations omitted).
[8] Del. Super. Ct. Civ. R. 56(c).
[9] *Singletarry v. Amer. Dept. Ins. Co.* 2011 WL 607017 at *2 (Del. Super.) (citing *Gill v. Nationwide Mut. Inc. Co.*, 194 WL 150902 at *2 (Del. Super.)).
[10] *Ebersole v. Lowengrub*, 180 A.2d 467, 468-69, (Del. 1962) (citing *Knapp v. Kinsey*, 249 F.2d 797 (6th Cir. 1957)).

but one inference, the question becomes one for decision as a matter of law.[11]

4. Dargan moves for summary judgment on the disability claim, Count III, made pursuant to DHPEPA on the basis that Dargan did not employ a sufficient number of employees (15) for each working day in each of 20 or more calendar weeks in the current or preceding calendar year during the relevant time frame in order to be subject to the statute, 19 *Del. C.* § 720.[12] The record evidence is that at no time during the two years preceding this action did Dargan employ 15 or more employees for a single day, much less every day for each of the preceding 20 calendar weeks.[13] Floray does not dispute Dargan's factual claim as to the number of its employees. Rather, Floray argues that Dargan is subject to DHPEPA because the correct number of employees under the statute is four, not 15, and Dargan employed in excess of four.[14]

5. Since there is no genuine issue of material fact, the question for the Court is how many employees must an employer employ in order to be subject to DHPEPA. The correct number now is four, but at the time Floray was employed by Dargan, and even when this suit was brought,[15] it was 15. Effective January 31, 2015, 19 *Del. C.* § 722(3) was amended to redefine the

---

[11] *Wooten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).
[12] Op. Br. in Supp. of Def.'s Mot. for Summ. J. at 15-16.
[13] *Id.*
[14] Pl.'s Ans. Br. in Opp. To Def.'s Mot. for Summ. J. at 23-24.
[15] The complaint was filed on August 21, 2014.

4

term "employer" so that it is now defined the same as it is defined by 19 *Del. C.* § 710, the DDEA statute.[16] "Employer" is defined by § 710(6) as any person employing four or more employees.[17] Prior to the 2015 amendment, "employer" was defined for purposes of the DPHERA statute as 15 employees.[18] The Complaint alleges that Floray was employed by Dargan from March 31, 2005 until January 18, 2013,[19] a period during which "employer" was defined as an employer with 15 or more employees.[20] It is obvious then that Dargan was not subject to DHPERA at the time the alleged disability discrimination occurred. Therefore, the Motion for Summary Judgment as to Count III (Discriminatory Discharge Because of Handicap or Disability – DHPERA and ADA)[21], is **GRANTED**.

6. The Court next turns to the sex discrimination claim, Count II. Under Delaware law it is unlawful for an employer to "discharge any individual or otherwise to discriminate against any individual with respect to compensation, terms, conditions or privileges of employment because of

---

[16] 79 Del. Laws, c. 381, § 1.
[17] 11 *Del. C.* § 710(6).
[18] *Id.*
[19] Compl. at ¶ 4.
[20] At oral argument, Floray argued that the amendment to § 722(3) was retroactive to the events alleged in the Complaint. She failed to cite anything in the amendment that would support an argument that the General Assembly intended that it apply retroactively. Additionally, she conceded in her Answering Brief at 23 n.93, "Delaware law counts the number of employees 'at the time of the alleged violation.'" Finally, when she filed her complaint on August 21, 2014, the number was fifteen. Accordingly, the Court will not apply the amendment retroactively.
[21] The ADA claim was abandoned.

such individual's...sex."[22] In order to establish a prima facie case of sex discrimination Floray must show that: (1) she is a member of a protected class; (2) she is qualified for the position in question; (3) she suffered an adverse employment action; and (4) circumstances exist that give rise to an inference of unlawful discrimination in that similarly situated male employees were treated more favorably.[23] A plaintiff may prove sex discrimination by direct evidence,[24] or indirectly through the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green.*[25] The parties have argued the motion under the *McDonnell Douglas* framework, and the Court will address the motion accordingly. Under this framework, Floray must first establish a prima facie case of sex discrimination.[26] Floray's burden in establishing a prima facie case "is not particularly onerous."[27] If she succeeds in establishing a prima facie case, the burden shifts to Dargan to proffer "legitimate non—discriminatory" reasons for its actions.[28] If Dargan meets this burden, the burden again shifts to Floray to demonstrate, by a preponderance of the evidence that Dargan's rationale is pretextual.[29]

To demonstrate that Dargan's rationale is pretextual, Floray must "point to

---

[22] 19 *Del. C.* § 711(a)(1).
[23] *Taylor-Bray v. Dep't of Servs. For Children, Youths & Their Families,* 2015 WL 1228319 at *4 (D. Del.); *aff'd* 627 Fed. Appx. 79 (3d Cir. 2015); *Spicer v. CADapult, Ltd.,* 2013 WL 6917142 at *3 (Del. Super.), *aff'd* 2014 WL 1273980 (Del.).
[24] *Price Waterhouse v. Hopkins,* 490 U.S. 228, 244-46 (1989).
[25] 411 U.S. 792 (1973).
[26] *See, Jones v. School Dist. of Philadelphia,* 198 F.3d 344, 352 (3d Cir. 1999).
[27] *Doe v. C.A.R.S. Protection Plus, Inc.,* 527 F.3d 358, 369 (3d Cir. 2008).
[28] *See, Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000).
[29] *Id.* at 142-43.

6

some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating determinative cause of the employer's actions."[30] "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is the proffered reason is a pretext)."[31]

7. Floray alleges that Dargan discharged her or discriminated against her with respect to her compensation, terms, conditions, or privileges of employment because of her sex in violation of DDEA.[32] Specifically, she alleges in her Complaint that Dargan denied her request for medical leave while a male employee, George Giberson ("Giberson") had all of his requests for medical leave approved;[33] that Giberson received numerous written reprimands known as Critical Incident Reports ("CIRs") and was not discharged, while she was discharged after receiving a single CIR;[34] and that male managers Giberson and Kenneth J. Farren ("Farren") were allowed to go to the bank to

---

[30] *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d. Cir. 1994).
[31] *Harding v. Careerbuilder, LLC,* 168 Fed. Appx. 535, 537 (3d Cir.) (quoting *Fuentes,* 32 F.3d at 764).
[32] Compl. at ¶ 71.
[33] *Id.* at ¶¶ 27-28.
[34] *Id.* at 36, 50-52.

make company deposits during company time while she was not;[35] In her Answering Brief in Opposition to Defendant's Motion for Summary Judgment, she adds that Dargan contested her successful attempt to receive unemployment compensation, yet discussed obtaining such compensation for Giberson;[36] that there was a "boys['] club" at 1-2-3 CA$H;[37] that Giberson was allowed some Saturdays off entirely, while she was required to work every Saturday;[38] that coverage for Giberson's branch was provided when he was off on a Saturday, while it was not provided for Floray or other female managers;[39] that Giberson had a working security system and bulletproof glass at his branch, while she had neither at her branch;[40] that, while Farren was responsible for handling bank commissioner yearly examinations, he required Floray to handle it one year, but never required Giberson to handle one;[41] that trash removal was provided at Giberson's branch, while it was not provided at another female manager's branch;[42] that Giberson was allowed to run personal errands during business hours, such as getting his hair cut, go out for lunch, bowl and mow the lawn, while no

---

[35] *Id.* at ¶¶ 53-55.
[36] Pl.'s Ans. Br. in Opp. to Def.'s Mot. for Summ. J. at 10.
[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.* at 11.
[41] *Id.*
[42] *Id.*

8

female branch managers were allowed to do the same;[43] that a male branch manager got a loan from the company;[44] that Farren made bank deposits for Giberson, while female managers had to make their own deposits;[45] and that the workplace composition was entirely male dominated.[46]

8. In its Opening Brief, Dargan first argues that Floray raises claims in her Complaint and in discovery that are not properly before the Court as they were not raised in her Charge of Discrimination before the Delaware Department of Labor, and thus, she has not exhausted her administrative remedies.[47] Dargan correctly points out with respect to Floray's sex discrimination complaint that she only alleged that Giberson had received numerous Critical Incident Reports without being fired and that he was allowed to go on medical appointments and coach at the YMCA on company time, while she was denied medical leave.[48] Dargan lists what it characterizes as 10 claims of discrimination which it believes Floray is now making in her Complaint or through the course of discovery that were not investigated by the Department of Labor.[49] Of these additional charges, only one appears in the Complaint – that Giberson and Farren were allowed to go

---

[43] *Id.* at 12.
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] Op. Br. in Supp. of Def.'s Mot. for Summ. J. at 7-8.
[48] *Id.* at 8.
[49] *Id.* at 8-9.

to the bank during work hours.[50] The allegations of discrimination that Dargan supposes Floray is making are substantially similar, but not identical to the allegations that Floray argues in her Answering Brief.

9. In response, Floray argues that the "four corners rule" concerning the scope of a charge, i.e., Dargan's position, has been rejected in favor of a standard inquiring whether a reasonable administrative investigation would have included an examination of the disputed factual matter.[51] On this point, Floray is correct. The parameters of a civil action are defined by the scope of the administrative investigation which can reasonably be expected to grow out of the charge of discrimination.[52] The Court finds that the allegations Floray makes with respect to sex discrimination are within the scope of an investigation which could reasonably be expected to grow out of her charge of sex discrimination. Therefore, the Court finds that she has exhausted her administrative remedies.

10. Next, Dargan argues that Floray cannot establish a prima facie case of sex discrimination because she suffered no adverse employment action.[53] Dargon focuses its argument on the contention that Floray was not terminated on January 18, 2013 when she was presented with a CIR, and,

---

[50] Compl. at ¶¶ 53-55.
[51] Pl.'s Ans. Br. in Opp. to Def.'s Mot. for Summ. J. at 33-34.
[52] See, *Webb v. City of Phila.,* 562 F.3d 256, 263 (3d Cir. 2009).
[53] Op. Br. in Supp. of Def.'s Mot. for Summ. J. at 9-13.

therefore, suffered no adverse employment action.[54] Floray, on the other hand, characterizes what happened on January 18th as a firing, whether direct or constructive.[55] An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits."[56] On that point both parties agree.[57] When viewed in the light most favorable to Floray, the evidence supports her contention that she was constructively terminated at least.

11.   Of all of the examples of discrimination on the basis of sex tendered by Floray, the only one that rises to the level of an adverse employment action is her claim that she was discharged because of her sex. Even viewing the events of January 18th in the light most favorable Floray, however, there has been no evidence presented to the Court that her discharge had anything to do with her sex. All of the facts offered by both parties support that conclusion. Instead, the evidence, if believed by a jury, would support her disability claim, which, as discussed above, she cannot pursue since Dargan was not subject to DHPERA at the time.

12.   Central to the dispute on January 18th was a CIR issued to Floray. The CIR, dated January 18, 2013 at 2:15 p.m. contained a supervisor's statement of

---

[54] *Id.*
[55] Pl.'s Ans. Br. in Opp. to Def.'s Mot. for Summ. J. at 17-18.
[56] *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).
[57] Op. Br. in Supp. of Def.'s Mot. for Summ. J. at 10; Pl.'s Ans. Br. in Opp. to Pltf.'s Mot for Summ. J. at 17.

violation that read, "The company does not allow pets to be in the workplace during business hours."[58] The CIR also stated, "If you can't work without the pets then you would be relieved of your duties."[59] In Dargan's view Floray chose not to accept the conditions of her employment and effectively abandoned her position.[60] Floray's version of events, as described in her Answering Brief, is that when she returned to work on January 18th she called Tim Dargan to report some customer complaints about another female employee.[61] Mr. Dargan, who did not want to address the complaints, told Floray to back off and then told her that he had received complaints about her dogs from the other female employee about whom Floray had complained.[62] Then, according to Floray, Mr. Dargan yelled, "Who is allowed to have their dogs with them and who is going to allow you to work somewhere else with them?"[63] When Floray told him she had PTSD, he then said, "If you have PTSD, if you are on medication, and if you need the dogs to do your job, I suggest you get a job which will allow you to do that."[64] Once Mr. Dargan decided that her dogs would no longer be allowed, he directed Farren to deliver the CIR and to tell Floray that if she could not

---

[58] App. of Conf. Docs. to Pl.'s Ans. Br. in Opp. to Def.'s Mot. for Summ. J. at Ex. 26.
[59] Id.
[60] Op. Br. in Supp. of Def.'s Mot. for Summ. J. at 10.
[61] Pl.'s Ans. Br. in Opp. to Def.'s Mot for Summ. J. at 4.
[62] Id.
[63] Id.
[64] Id. at 5.

work without the dogs, she would have to leave.[65] When Farren issued the CIR, he told Floray that she would be terminated if she needed the dogs at work. [66] When Floray asked for time to think about it, Farren told her to leave and terminated her immediately without considering whether the presence of the dogs was medically necessary.[67] It is clear from the above recitation of facts that no genuine issue of material fact exists that would implicate sex discrimination in any claimed adverse employment action. For that reason, she has failed to establish a prima facie case of sex discrimination and, therefore, Dargan is entitled to judgment as a matter of law. Accordingly, the Motion for Summary Judgment as to Count II (Discriminatory Discharge Because of Sex – DDEA and Title VII)[68] is **GRANTED.**

13.   This result still obtains under the *McDonald Douglas* burden shifting framework that shifts the burden to Dargan to demonstrate legitimate non–discriminatory reasons for its actions upon Floray demonstrating a prima facie case of sex discrimination. Dargan responds to each of Floray's allegations as follows: (1) Contrary to Floray's claim, Giberson did not have all of his requests for medical leave approved;[69] (2) Giberson was not terminated after having received numerous CIRs because CIRs are not used

---

[65] *Id.*
[66] *Id.*
[67] *Id.* at 5-6.
[68] The Title VII claim was abandoned.
[69] Op. Br. in Supp. of Def.'s Mot. for Summ. J. at 28.

13

for terminations, but rather as a means to get employees back on track and warn them of the consequences should they fail to correct their deficiencies;[70] (3) Floray went to the bank during work hours herself without being disciplined;[71] (4) Farren and Giberson worked at the only store handling large amounts of cash[72]; (5) to the extent they were allowed to go to the bank during work hours while she was not, the store where they worked had other employees working, so that the store would not have to be closed when they went to the bank;[73] (6) bulletproof glass was installed in Giberson's store because it began dealing in large amounts of cash as a check cashing operation, while the other stores dealt with very little cash;[74] (7) a security camera was installed at Giberson's store to monitor the employees due to concerns about the large amount of cash in the store, a concern that was not present in stores dealing in little cash;[75] and (8) Giberson never missed time on a Saturday for umpiring and he permitted to

---

[70] *Id.*
[71] *Id.* at 29.
[72] *Id.* Because some deposits were in excess of $10,000.00, it was necessary to go to the bank during banking hours to complete Currency Transaction Reports.
[73] *Id.* The same rules applied to all single employee stores, including the one managed by a male. Further, the current store manager at store where Farren and Giberson worked, Luz Cannon, a female, likewise makes bank deposits during work hours.
[74] *Id.* at 30. The same store with bulletproof glass in now managed by a female, Luz Cannon. Dargan's only remaining store, which does not have bulletproof glass, is managed by a male.
[75] *Id.* at 31.

be off work on Saturdays to work at the YMCA far less than Floray alleges.[76]

14. Floray fails to respond specifically to any of Dargan's proffered non-discriminatory reasons with regard to her sex discrimination claim. Instead, she simply restates her allegations of discrimination, arguing that the weight of the evidence demonstrates discrimination.[77]

15. The Court has spent a great deal of time and effort carefully reviewing all of the deposition transcripts submitted by Floray in the Appendix to her Answering Brief.[78] It is evident to the Court that most of Floray's allegations of sex discrimination are ones for which Dargan provides legitimate non-discriminatory reasons for its actions. When the burden shifts to Floray, she fails to demonstrate by a preponderance of the evidence that Dargan's explanations were pretextual. Specifically, Dargan has proffered non-discriminatory reasons for not terminating Giberson despite his numerous CIRs, and for the differing banking and security arrangements at Giberson's store vis-à-vis all of the other stores (including Floray's), and for adjustments to Giberson's work schedule so that he could work at the YMCA. The Court finds those explanations reasonable reasonable and not pretextual.

---

[76] *Id.* at 31-32. (Giberson always made up the time he missed and more on his off day. Further, any employee, including Floray, could get whatever time off they wanted if they arranged for coverage for their shift.)

[77] Pf.'s Ans. Br. in Opp. to Def.'s Mot. for Summ. J. at 33.

[78] *See,* App. of Pub. Docs. to Pf.'s Ans. Br. in Opp. to Def.'s Mot. for Summ. J.

15

16. Floray also claims an unemployment double standard because Dargan contested her unemployment claim while discussing a way to get unemployment compensation for Giberson.[79] Interestingly, Floray does not allege that obtaining unemployment compensation for Giberson ever went beyond the discussion stage. Although Dargan does not address this allegation in its Opening Brief (probably because Floray did not make this allegation in her complaint and only presses it in her Answering Brief), Tim Dargan discussed the issue in his deposition. In that deposition, Mr. Dargan testified that, if Giberson were eligible for unemployment compensation, he would tell whoever asked about it that Giberson was ill with cancer and could no longer work.[80] In contrast, Dargan contends that Floray left work voluntarily. Floray offers nothing to suggest that the reason for merely discussing unemployment compensation for Giberson was pretextual. Accordingly, the Court finds that Dargan has offered a non-discriminatory reason for its action that is not pretextual.

17. For other allegations of sex discrimination, Floray is unable to produce sufficient evidence to support her claims. She has produced no evidence that all of Giberson's requests to attend medical appointments were approved. Her claim that Farren "allowed" Giberson to run personal errands is based solely on the testimony of Rebecca Reed, who said Giberson ran personal

---

[79] Pf.'s Ans. Br. in Opp. to Def.'s Mot. for Summ. J. at 10.
[80] App. of Pub. Docs. to Pf.'s Ans. Br. in Opp. to Def.'s Mot. for Summ. J., Ex. 7, Dargan Dep. at 99-101.

16

errands or got his hair cut "on his lunchtime,"[81] and the speculation and hearsay testimony offered by Joanne Husk.[82] It is denied by Farren.[83] The combined testimony of Reed and Husk clearly is insufficient to sustain a sex discrimination claim.

18. Still other claims of sex discrimination do not allege any discrimination against her, are nothing more than generalized impressions, or are not evidence of discrimination at all. Falling into these categories are her complaint that a male got a loan from the company, apparently against policy, while another woman was required to go outside of the company for a loan,[84] that there was trash removal at Giberson's store, but not for Rebecca reed at the Concord Pike store;[85] that there was a "boys club" at 1-2-3 CA$H;[86] that the workplace composition evidences an "all male dominated team";[87] and that on a single occasion Floray was required to handle a bank commissioner examination.[88]

19. Finally, the Court turns to the retaliatory discharge claim, Count I. In this claim Floray alleges that she was discharged because she opposed sex

---

[81] *Id.* Ex. 8, Reed Dep. at 34-35

[82] *Id.* Ex. 9, Husk Dep. at 47-48.

[83] *Id.* Ex. 6, Farren Dep. at 170.

[84] Floray never alleges that she was denied a loan.

[85] Floray does not allege that she was affected by the alleged trash removal disparity.

[86] This allegation is a generalized impression and is too vague to be actionable.

[87] The sex of Tim Dargan, who owned the company, Farren and Giberson is irrelevant absent evidence of sex discrimination.

[88] Apparently, Floray was the only employee, male or female, asked to perform this additional function, and then, only on a single occasion. This fact is simply not evidence of sex discrimination.

discrimination practices prohibited by the DDEA, or alternatively because she participated in any manner in an investigation, proceeding, or hearing to enforce the provisions of the DDEA.[89] It appears, however, that there is no factual basis in the record to support the alternative retaliatory discharge claim, and that Floray is relying exclusively on her opposition to sex discrimination practices as the basis for her retaliatory discharge claim.

20. In order to establish a retaliatory discharge claim, Floray must show that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal link existed between elements (1) and (2).[90] Her claim for retaliation is subject to the *McDonnell Douglas* burden shifting analysis.[91]

21. In order to make out a prima facie case, Floray alleges that she engaged in protected activity when, on December 27, 2012, she complained to Farren of sex discrimination;[92] that she suffered an adverse employment action when she was terminated on January 18, 2013;[93] and that a causal link exists between the protected activity and the adverse employment activity by virtue of their unusual temporal proximity.[94]

[89] Compl. at ¶¶ 66-67.
[90] *Jacques-Scott v. Sears Holding Corp.,* 2013 WL 2897427 at *9 (D. Del. 2013).
[91] *Miller v. State of Delaware, Dep't of Pub. Safety,* 2011 WL 1312286, at *12 (Del. Super.).
[92] Pl.'s Ans. Br. in Opp. to Def.'s Mot for Summ. J. at 3.
[93] *Id.* at 17-18.
[94] *Id.* at 19-20.

22.  In its Motion for Summary Judgment, Dargon denies that Floray engaged in protected activity by making a sex discrimination complaint;[95] that she suffered any adverse employment action;[96] and that there was a causal link between any claimed protected activity and any adverse employment action.[97]

23.  Assuming the disputed fact that Floray did engage in protected activity by making a sex discrimination complaint,[98] the unusual temporal proximity allegation is not enough to establish a causal link to the claimed adverse employment action. The mere temporal proximity of three weeks between her complaint of sex discrimination and the adverse employment action is not sufficient to create a triable issue as to whether her alleged termination was motivated by retaliatory intent.[99] Moreover, under the facts as discussed above, it is patent that the dispute on January 18, 2013 had nothing to do with Floray's sex discrimination complaint. Floray's failure to establish a causal link between her claimed protected activity and any adverse employment has left her unable to establish a prima facie case of retaliation.

---

[95] Op. Br. in Supp. of Def.'s Mot. for Summ. J. at 13-14.
[96] *Id.* at 9-12.
[97] *Id.* at 14.
[98] A claim that would have been without merit in any event.
[99] *Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 501 (3d Cir. 1991) (timing alone will not suffice to prove retaliatory motive).

Accordingly, the Motion for Summary Judgment as to Count I, (Retaliatory Discharge – DDEA and Title VII)[100] is **GRANTED**.

Therefore, Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

_____
Ferris W. Wharton, J.

---

[100] The Title VII claim was abandoned.