# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MICHAEL AIKENS, )
                         )
        Plaintiff, )
                         )   C.A. No. N22C-11-075 FWW
      v. )
                         )
DELAWARE TRANSIT CORPORATION )
and DELAWARE AUTHORITY FOR )
REGIONAL TRANSIT, )
                         )
        Defendants. )

Submitted: March 24, 2025
Decided: May 27, 2025

*Upon Defendants' Motion for Summary Judgment,*
**DENIED**

*Upon Plaintiff's Partial Motion [sic] for Summary Judgment*
**DENIED**

## <u>MEMORANDUM OPINION</u>

Michelle D. Allen, Esquire, ALLEN & ASSOCIATES, 4250 Lancaster Pike, Suite 230, Wilmington, DE 19805, Attorney for Plaintiff Michael Aikens.

Sehr Rana, Esquire, Deputy Attorney General, DEPARTMENT OF JUSTICE, 820 North French Street, 6th Floor, Wilmington, DE 19801, Attorney for Defendants Delaware Transit Corporation and Delaware Authority for Regional Transit.

**WHARTON, J.**

## I.    INTRODUCTION

This case involves a claim of disability discrimination brought by Plaintiff Michael Aikens ("Aikens") against his employers Defendants Delaware Transit Corporation ("DTC") and Delaware Authority for Regional Transit ("DART") (collectively "Defendants").    Aikens was a bus operator employed by the Defendants.  The gravamen of the Complaint is that the Defendants terminated him after unlawfully regarding him as disabled due to a positive drug test following an accident in which he was injured.  Aikens and the Defendants have each moved for summary judgment.  After carefully considering the motions and supporting briefs, the Court concludes there are genuine issues of material fact a jury must resolve. Accordingly, both motions for summary judgment are **DENIED.**

## II.    FACTS AND PROCEDURAL HISTORY

Aikens brought this disability discrimination action on November 8, 2022.[1] The Complaint now consists of a single count of Discrimination in Violation of the Delaware Persons with Disabilities Employment Protections Act ("DPDERA") under 19 *Del. C.* § 720 *et. seq.*[2]  Aikens alleges that while working for Defendants

---

[1] Compl., D.I. 1.

[2] *Id.*  The Complaint alleges a second count of Breach of the Implied Covenant of Good Faith and Fair Dealing, but Aikens agreed to dismiss that count in response to the Defendants' earlier Motion to Dismiss.  Pl's Opp. to Defs.' to Dismiss at ¶ 13, D.I. 23.

2

as a bus operator, he was injured in a motor vehicle accident which was not his fault.[3] He was taken to the hospital for medical attention and while there was given Percocet for the pain he was experiencing from the accident.[4] After receiving the Percocet, a representative of the Defendants required Aikens to undergo a post-accident drug test while he was still at the hospital.[5] The drug test showed a positive result for a controlled substance which Aikens explained to the Defendants' representative was a result of the Percocet he had been given in the hospital.[6] Nonetheless, he was suspended without pay pending the outcome of a pre-termination hearing and ultimately terminated effective July 30, 2021 for failing the post-accident drug test.[7] Aikens alleges that the Defendants unlawfully regarded him as disabled due to the positive drug test and terminated him.[8] Following his termination, Aikens filed a Charge of Discrimination with the Delaware Department of Labor and Equal Employment Opportunity Commission and, on August 10, 2022, received a "Notice of Right to Sue" from the Department of Labor.[9] This action was brought within 90 days of Aikens' receipt of the Right to Sue Notice.[10]

---

[3] Compl. at ¶¶ 11-13, D.I. 1.
[4] *Id.* at ¶¶ 15-16.
[5] *Id.* at ¶ 17.
[6] *Id.* at ¶¶ 18-19.
[7] *Id.* at ¶¶ 20-21.
[8] *Id.* at ¶¶ 23.
[9] *Id.* at ¶¶ 6-7.
[10] *Id.* at ¶ 8.

In the discovery phase of this case, depositions were taken of Jonathan Phillips ("Phillips"), a DART Street Supervisor, Chief Human Resources Officer Diana Ferrell ("Ferrell"), and Aikens.[11] Phillips responded to the scene of the accident and determined that the accident fell under DART's Drug and Alcohol Policy 23.10 ("Policy") and that a post-accident test was required.[12] Aikens then was drug tested at the hospital where he was being treated for injuries he sustained in the accident.[13] Aikens tested positive for opioids.[14] Ferrell attempted to contact Aikens numerous times and sent him a referral for an employee assistance provider because she thought federal regulations required her to do so due to the sensitive nature of Aikens' position.[15] Aikens admitted receiving an inquiry from DART asking for a reason for the positive result.[16] Based on the Policy, Aikens was suspended without pay effective June 17, 2021 pending the outcome of a pre-termination hearing.[17]

At that hearing on July 30th, counsel for Aikens told the DTC that the positive test result was attributable to Percocet that Aikens was given at the hospital, but counsel provided no documentation.[18] By letter dated August 11, 2021, DTC

---

[11] *Id.* at ⁋ 2.
[12] *Id.* at ⁋ 6.
[13] *Id.* at ⁋ 7.
[14] *Id.*
[15] *Id.*
[16] *Id.* at ⁋ 8.
[17] *Id.*
[18] *Id.* at ⁋ 9.

notified Aikens that he was terminated effective July 30, 2021, the date of his pre-termination hearing, for violating DTC's Drug and Alcohol Policy.[19] The letter explained that Aikens had failed to provide any documentation supporting his claim that he was administered Percocet at the hospital prior to his drug test.[20] It seems Aikens later was able to produce in discovery a billing statement from the hospital showing "Oxycodone/Acetamin 1 EA Tab" which Aikens represents is the Percocet he was administered in the emergency room.[21]

Aikens disputes that he ever received a referral for an employee assistance provider.[22] He adds that Ferrell admitted that he was terminated in part for failing to contact the employee assistance provider or to return the required release form.[23] Otherwise, there is no real dispute about the underlying facts, which is not to say that the parties agree on how to characterize those facts.

Both Aikens and the Defendants move for summary judgment. Briefing on the motions was completed on March 24, 2025.

### III.   STANDARD AND SCOPE OF REVIEW

Superior Court Civil Rule 56(c) provides that summary judgment is appropriate if, when "there is no genuine issue as to any material fact and that the

---

[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] Pl.'s Resp. at ₱ 6, D.I. 62.
[23] *Id.*

moving party is entitled to a judgment as a matter of law."[24]  The moving party initially bears the burden of demonstrating that the undisputed facts support its claims or defenses.[25]  If the moving party meets its burden, the burden shifts to the non-moving party to show that there are material issues of fact to be resolved by the ultimate fact-finder.[26]  When considering a motion for summary judgment, the Court's function is to examine the record, including "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," in the light most favorable to the non-moving party to determine whether genuine issues of material fact exist "but not to decide such issues."[27]  Summary judgment will only be appropriate if the Court finds there is no genuine issue of material fact.  When material facts are in dispute, or "it seems desirable to inquire more thoroughly into the facts, to clarify the application of the law to the circumstances," summary judgment will not be appropriate."[28]  However, when the

---

[24] Super. Ct. Civ. R. 56(c); *Buckley v. State Farm Mut. Auto. Ins. Co.*, 139 A.3d 845, 847 (Del. Super. Ct. 2015), aff'd, 140 A.3d 431 (Del. 2016) (quoting *Moore v. Sizemore*, 405 A.2d 679, 680 (Del.1979).

[25] *Sizemore*, 405 A.2d at 681.

[26] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).

[27] Super. Ct. Civ. R. 56(c); *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992).

[28] *Ebersole v. Lowengrub*, 180 A.2d 467, 468-60, (Del. 1962) (citing *Knapp v. Kinsey*, 249 F.2d 797 (6th Cir. 1957)).

facts permit a reasonable person to draw but one inference, the question becomes one for decision as a matter of law.[29]

In order to establish a disability discrimination claim, Aikens must show that: (1) he has a disability or handicap within the meaning of DPDERA; (2) he was otherwise qualified to perform the essential functions of the job, with or without accommodation from DART; and (3) he suffered an adverse employment action as a result of discrimination.[30] It is well-settled that Delaware courts have adopted the burden shifting framework set forth in *McDonnell Douglas v. Green*[31] to analyze discrimination claims.[32] Under this framework, Aikens must first establish a *prima facie* case of discrimination. Aiken's burden in establishing a *prima facie* case "is not particularly onerous."[33] If he succeeds in establishing a *prima facie* case, the burden shifts to the Defendants to proffer "legitimate non-discriminatory" reasons for their actions.[34] If the Defendants meet this burden, the burden again shifts to Aikens to demonstrate that the Defendants' rationale is pretextual. Pursuant to *Fuentes v. Perskie,* in order to demonstrate that the Defendants' rationale is

---

[29] *Wooten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).

[30] *Id.* (citing *Polak v. Sterilite Corp.,* 2011 WL 1753757 (N.D. Tex. May 4, 2011).

[31] 411 U.S. 792 (1973)

[32] *Miller v. State of Delaware, Dep't of Pub. Safety*, 2011 WL 1312286, at *12 (Del. Super.).

[33] *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 369 (3d Cir. 2008).

[34] *See, Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

pretextual, Aikens must "point to some evidence, direct or circumstantial from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating determinative cause of the employer's actions."[35] "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate employment action (that is the proffered reason is a pretext)."[36]

## IV. THE PARTIES' CONTENTIONS

### A. The Defendants' Motion

1. In their motion, the Defendants argue that summary judgment is appropriate because Aikens: (1) fails to adduce any direct evidence of discrimination; (2) fails to establish that he was regarded as disabled under the DPDERA; and (3) the positive drug test was a legitimate non-discriminatory reason for Aikens' termination.[37] Defendants argue that Aikens has presented no direct evidence of discrimination, thus necessitating that the Court undertake the *McDonell*

---

[35] 32 F.3d 759, 764 (3d. Cir. 1994).
[36] *Harding v. Careerbuilder, LLC*, 168 Fed. Appx. 535, 537 (3d Cir.) (quoting *Fuentes*, 32 F.3d at 764).
[37] Defs.' Mot. for Summ. J., D.I. 57.

*Douglas* burden shifting analysis.[38]  Here, Defendants conclude under that analysis, there was no discrimination – only innocuous practices.[39]

Next, the Defendants argue that Aikens fails to establish that he was regarded as disabled under DPDERA.  Under DPDERA, a "person with a disability" does not include anyone whose employment, by reason of current drug abuse, would constitute a direct threat to property or safety of others.[40]  Aikens argues he is regarded as a person with a substantially limiting impairment because, although not impaired, he was regarded by the Defendants as having a substantially limiting impairment.[41]

In the Defendants' view the facts do not support a conclusion that they regarded Aiken as substantially impaired.  When Phillips administered the drug test to Aikens, he had no information suggesting that Aikens had an impairment – he was just following normal protocol.[42]  Aikens was not regarded as having an impairment, but was regarded simply as an employee subject to certain terms of employment, which included being subject to drug testing.[43]  Further, since the

---

[38] *Id.* at ¶ 12, D.I. 57.
[39] *Id.* at ¶ 13.
[40] *Id.* at ¶ 15.
[41] *Id.* at ¶ 17.
[42] *Id.* at ¶ 19.
[43] *Id.*

Defendants were only aware of a single failed drug test, there is no evidence to suggest they viewed Aikens as an illegal drug user.[44]

Finally, the Defendants contend they are entitled to summary judgment because Aiken's failed drug test is a legitimate non-discriminatory reason for his termination. Ensuring that their bus operators are free from illegal drugs by testing them after accidents is a legitimate safety measure.[45] There is no evidence that the tests were applied in a discriminatory manner.[46]

Aikens disputes the Defendants' contention that they did not regard him as a disabled person. He argues that the Defendants' Policy, as applied, resulted in Akins being administered a drug test simply because the bus was in motion when the accident occurred without any reasonable suspicion that he was impaired.[47] By requiring drug tests without reasonable suspicion of impairment, the Policy preemptively regards all drivers involved in accidents resulting in death or bodily injury requiring hospitalization as being impaired.[48] DPDERA does not permit post-accident medical examinations as set forth in the Policy.[49] The Defendants regarded Aikens as disabled when they administered him a drug test without reasonable

---

[44] *Id.* at ¶ 20.
[45] *Id.* at ¶ 22.
[46] *Id.*
[47] Pl.'s Resp. at ¶ 3, D.I. 62.
[48] *Id.*
[49] *Id*. at ¶ 4.

suspicion and by concluding he was suffering from the disability of drug addiction which substantially limited his ability to drive.[50]

Akins also disputes the legitimacy of the Defendants proffered non-discriminatory reason for terminating him. This argument, like the foregoing one, is based on Aikens' contention that the Policy, as applied to him and others, violates DPDERA.[51] Under the Americans with Disabilities Act ("ADA"), post-accident drug testing is considered a medical examination, and, as such, requires the employer to show it is "job-related and consistent with business necessity.[52] But, DPDERA does not contain an exception for medical examinations that are "job-related and consistent with business necessity."[53] The ADA's requirement that a medical examination be consistent with business necessity is an objective one and unwarranted examinations are not saved by the employer's subjective belief in the necessity.[54] Because the Defendants admit they terminated Aikens for violating the Policy, and because the Policy can only be described as discriminatory, a reasonable trier of fact could conclude that the Defendants failed to provide a non-discriminatory justification for terminating Aikens.[55]

---

[50] *Id.* at ¶ 5.
[51] *Id.* at ¶ 11.
[52] *Id.* (quoting *EEOC v. U.S. Steel Corp.,* 2013 WL 625315 (W.D. Pa Feb. 20, 2013).
[53] *Id.* at n. 14.
[54] *Id.*
[55] *Id.* at ¶ 18.

The Defendants make two points in reply. First, there is no evidence that they regarded Aikens as disabled.[56] Here, Phillips could not discount that Aikens contributed to the accident because he was not stationary and "almost mechanical[ly]" applied the Policy.[57] There are no facts to support the conclusion that Phillips considered Aikens as having a substantially limiting impairment.[58] Similarly, other than the one positive drug test, Farrell had no knowledge of Aikens and made what she considered a mandatory referral to an employee assistance program.[59] Second, the post-accident drug test was not a medical examination prohibited by the ADA because it served the business necessity of safety. [60]

### B.     Aiken's Motion for Summary Judgment

In his summary judgment motion, Aikens again presses his argument that the Defendants' Policy related to post-accident testing, as applied, "is discriminatory on its face as it constitutes an impermissible medical examination, and thereby regards those employees involved in an accident as disabled.[61] DPDERA prohibits an employer from discharging an employee on the basis of physical, mental or other examinations that are not related to essential job functions.[62] The ability of

---

[56] Defs.' Reply at I, D.I. 72.
[57] *Id.* at ¶ 9.
[58] *Id.*
[59] *Id.* at ¶ 10.
[60] *Id.* at II.
[61] Pl.'s Part. [sic] Mot. for Summ. J., D.I. 59.
[62] *Id.* at ¶ 11.

employers to subject employees to medical examinations is limited to circumstances referenced in 19 *Del. C.* § 724(f) *et seq.*[63] Akins contends that the Policy fails to meet any of the statutorily enumerated exceptions.[64]

Even if the Policy meets one of the limited exceptions, Aikens argues that the Defendants have failed to meet their burden of showing that the medical examination was objectively job-related and consistent with business necessity.[65]  An employee need not be disabled to challenge a medical examination.[66]  According to Aikens, the Policy, as applied, is broader and more intrusive than business necessity requires, and thus discriminatory, because post-accident drug testing is required without an individualized reasonable suspicion of a safety concern.[67]

In order to establish his claim for disability discrimination Aikens agrees he must show he was disabled within the meaning of DPDEPA; he was otherwise qualified to perform the essential functions of the job; and he suffered an adverse employment decision as a result of discrimination.[68]  He argues that there is no dispute that he has met those criteria.  First, despite the fact that he actually was not a drug user, Aikens contends that the Defendants regarded him as disabled.[69] "An

---

[63] *Id.* at ⁋ 12.
[64] *Id.*
[65] *Id.* at ⁋⁋ 13, 14.
[66] *Id.* at ⁋ 15.
[67] *Id.* at ⁋ 19.
[68] *Id.* at 21.
[69] *Id.*

individual who 'is erroneously regarded as engaging in illegal drug use but is not engaged in such use' is regarded as disabled if the employer perceived the plaintiff as substantially limited in a major life activity because of the alleged drug use."[70] The fact that the Defendants required him to submit to a medical examination for drugs without an independent medical basis demonstrates they regarded him as disabled.[71] Because they regarded him as disabled, the Defendants discriminated against him when they took the adverse job action of terminating him.[72] Finally, even assuming the Defendants can provide a non-discriminatory reason for the Policy, they discriminated against him when they deviated from the Policy by failing to engage in the interactive process following his positive drug test.[73]

The Defendants oppose the motion. They argue that unlike the federal ADA, DPDERA does not contain a broad prohibition on medical examinations.[74] Instead, medical examinations are expressly permitted under 19 *Del. C.* § 724(f)(4).[75] Since Aikens' claim is brought under DPDERA and not ADA, arguments regarding the propriety of medical examinations are irrelevant.[76] Nevertheless, if the Court were to read ADA's prohibition on medical examinations into DPDERA, ADA's

---

[70] *Id.* at ¶ 23 (quoting 42 U.S.C. § 42114(b)(3)).
[71] *Id.* at ¶ 24.
[72] *Id.* at ¶ 25.
[73] *Id.*
[74] Defs.' Resp. at ¶ 9, D.I. 61.
[75] *Id.*
[76] *Id.*

regulations do not categorize a test to determine the illegal use of drugs as a medical examination.[77]

The Defendants reject Aikens' argument that the Policy under which the drug test was administered was discriminatory as applied to him.[78] The decision to administer the test was made without a particularized reference to Aikens but was based on the circumstances of the accident.[79] Phillips made no assumptions about Aikens, but rather, administered the test in accordance with the Form.[80]

In reply, Aikens acknowledges that ADA and DPDERA are not identical, but insists DPDERA offers an employee more protections.[81] DPDERA does not specifically prohibit medical examinations, but it does prohibit employers from discharging qualified employees with a disability on the basis of physical examinations that are not directly related to the essential functions of the job.[82] He finds the Defendants' reliance on 19 *Del. C.* § 704(f)(4) to support medical examinations misplaced because that section only applies to preemployment tests.[83] Therefore, he concludes DPDERA prohibits the examination administered to him.[84]

---

[77] *Id.* at ¶¶ 10-13.
[78] *Id.* at ¶¶ 14-15.
[79] *Id.* at ¶ 15.
[80] *Id.*
[81] Pl.'s Reply at ¶ 6, D.I. 71.
[82] *Id.*
[83] *Id.* at ¶ 7.
[84] *Id.* at ¶¶ 16-28.

Finally, in his Reply brief he reasserts his contentions that the Policy was discriminatory on its face and as applied to him.[85]

## V. DISCUSSION

Aikens brings his claim under DPDERA. In order to prove a disability discrimination claim, Aikens must show that: (1) he had a disability as defined by DPDERA; (2) he was otherwise able to perform the functions of the job; and (3) he suffered an adverse employment action as a result of discrimination. The dispute in this case is joined on the questions of whether Aikens had a DPDERA defined disability and whether his termination was the result of discrimination. There is no real question that Aikens was otherwise qualified to operate a bus and that he suffered an adverse employment action. It is an unlawful employment practice under DPDERA for an employer to discharge a qualified person with a disability because of the disability.[86] It is also an unlawful employment practice to discharge a qualified person with a disability on the basis of a physical examination that is not directly related to the essential functions of the job.[87]

A good starting point in analyzing the parties' summary judgment motions is to review relevant definitions under that act. Specifically, "'Disability' means any condition or characteristic that renders a person a person with a disability as defined

---

[85] *Id.* at 80.
[86] 19 Del. C. § 724(a)(2).
[87] 19 Del. C. § 724(a)(5).

16

in this section."[88] A "Person with a disability" includes a person who is regarded as having an impairment.[89] "'Is regarded as having an impairment' means an individual that establishes the individual subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity. Such impairment does not include impairments that are transitory and minor."[90] "'Person with a disability' shall not include any individual who is an alcoholic or drug abuser whose current use of alcohol or drugs prevents such individual from performing the duties of the job in question or whose employment, by reason of such current alcohol or drug abuse, would constitute a direct threat to property or the safety of others."[91] "'Qualified person with a disability' means a person with a disability who, with or without reasonable accommodation, can satisfactorily perform the essential functions of the job in question."[92]

With those definitions in mind, the Court turns to the *McDonnell Douglas* burden shifting analytical framework to assess the merits of the parties' summary

---

[88] 19 *Del. C.* § 722(2).
[89] 19 *Del. C.* § 722(4)(c).
[90] 19 Del. C. § 722(4)(c)(3). "This term is intended to be interpreted in conformity with the federal Rehabilitation Act of 1973 [29 U.S.C. § 701 et. seq.], as amended, and, consistent with § 728 of this title, shall be further defined by the Secretary through regulation to clarify and delimit its scope following adequate public notice and comment."
[91] 19 *Del. C.* § 722(4)(c)(5).
[92] 19 *Del. C.* § 722(5).

judgment motions. In doing so the Court examines the record in the light most favorable to the non-moving party in each motion to determine if there are genuine issues of material fact.

Initially, Aikens must carry the burden of establishing a *prima facie* case of disability discrimination. His argument is fourfold. First, the Defendants' Policy, as applied, is discriminatory on its face as it constitutes an impermissible medical examination thereby regarding all employees involved in accidents as disabled.[93] Only in the limited circumstances set out in 19 *Del.C.* § 724(f) may an employer require or request a medical examination of an employee and Aikens' situation is not one of them.[94] Second, even assuming *arguendo* that a the Policy meets one of the exceptions, it was discriminatorily applied to Aikens, because, objectively, the test was not "job-related and consistent with business necessity."[95] In Aikens case, because the policy did not require or permit an individualized determination of a reasonable suspicion of a safety concern before he was subjected to a medical examination, the Policy was discriminatorily applied as to him.[96] Third, Aikens was regarded as disabled because the Defendants perceived him to be him substantially impaired in a major life activity because of the alleged drug use by requiring him to

---

[93] Pl.'s Part. [sic] Mot. for Summ. J. at ⁋ 10, D.I. 59.
[94] *Id.* at ⁋ 12.
[95] *Id.* at ⁋⁋ 13-14.
[96] *Id.* at ⁋⁋ 18-19.

18

submit to a drug test without an individualized reasonable basis to do so.[97]  Fourth, the Defendants discriminated against Aikens when they failed to follow the Policy's requirement to engage in any interactive process by referring him to an employee assistance program.[98]

With respect to examinations of employees, DPDEPA prohibits an employer from "discharge[ing] or tak[ing] other discriminatory action against a qualified person with disability on the basis of physical, mental, or other examinations that are not directly related to the essential functions of the job."[99]  Whether Aikens' drug test was a medical examination, or not, it certainly was an "other examination." Therefore, DPDERA requires that it be "directly related to the essential functions of the job."  In this case, DPDERA requires at least two fundamental factual determinations – whether  Aikens' drug was "directly related to the essential functions of the job" and whether he was a "qualified person with a disability."

There can be no doubt that one of the essential functions of operating a bus is that the operator not be under the influence of drugs.   Testing an operator for the presence of drugs under the appropriate circumstance, without doubt, can be directly related to the essential functions of the job.  It also can be unrelated to those essential

---

[97] *Id.* at ⁋⁋ 22-24.
[98] *Id.* at ⁋ 29.
[99] 19 Del. C. § 724(a)(5).

job functions when administered in inappropriate circumstances. The discriminatory effect of the Policy, *vel non*, is ancillary to that factual determination.

The Court finds that a determination of the appropriateness of the test under the particular facts of this case is a genuine issue of material fact for the jury to decide. Put another way, if the jury finds that testing Aikens, under the circumstances he was tested, was not directly related to the essential functions of operating a bus, Aikens has partially established a *prima facie* case of disability discrimination. A contrary finding would not support discrimination.

Next, Aikens must make a *prima facie* showing that he is a qualified person with a disability. He can do so by showing that the Defendants "regarded him as having an impairment."[100] A determination of whether the Defendants regarded Aikens as disabled also is fact sensitive and follows to a large degree the jury's finding of facts regarding the drug test. Nevertheless, Aikens has made at least a *prima facie* showing that the Defendants regarded him as having an impairment.

As a result, Aikens has made a *prima facie* case of disability discrimination. Under *McDonnell Douglas*, the burden now shifts to the Defendants to offer non-discriminatory reasons for their actions. Their reliance on Aikens failed drug test meets that burden.

---

[100] 19 *Del. C.* § 722(4)(c).

Finally, the burden shifts back to Aikens to show the Defendants' rationale for terminating him was pretextual. The Court finds that he has met that burden by highlighting facts in the record that establish that the Defendants knew before Aikens was given the drug test that he had received medication in the hospital and by disregarding his testimony to that effect at his pre-termination hearing.

When examining the record in the light most favorable to the non-moving party in each motion, the Court finds genuine issues of material fact exist so as to preclude summary judgment on the issue of whether Aikens has established a *prima facie* case of discrimination and whether the Defendants' rationale for terminating him was pretextual.

**THEREFORE**, the Motion for Summary Judgment of Defendants Delaware Transit Corporation and Delaware Authority for Regional Transit is **DENIED.** Plaintiff Michael Aikens' Partial Motion [sic] for Summary Judgment also is **DENIED.**

**IT IS SO ORDERED.**

<u>/s/ *Ferris W. Wharton*</u>
Ferris W. Wharton, J.

21